**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ROBIN WHEATLEY,**

                                **Plaintiff,**

                v.                                                         **6:21-CV-1006**
                                                                              **(FJS/TWD)**

**NEW YORK STATE UNITED TEACHERS,**
**NEW HARTFORD EMPLOYEES UNION, and**
**NEW HARTFORD CENTRAL SCHOOL DISTRICT,**

                                **Defendants.**
_____

**APPEARANCES**                                    **OF COUNSEL**

**THE FAIRNESS CENTER**                        **DAVID R. DOREY, ESQ.**
500 North Third Street, Suite 600b          **NATHAN J. MCGRATH, ESQ.**
Harrisburg, Pennsylvania 17101
Attorneys for Plaintiff

**NEW YORK STATE UNITED**               **ANDREA A. WANNER, ESQ.**
**TEACHERS**                                       **CLAYTON EICHELBERGER, ESQ.**
800 Troy-Schenectady Road
Latham, New York 12110-2455
Attorneys for Defendants New
York State United Teachers and
New Hartford Employees Union

**ALTSHULER BERZON LLP**              **SCOTT A. KRONLAND, ESQ.**
177 Post Street, Suite 300
San Francisco, California 94108
Attorneys for Defendants New
York State United Teachers and
New Hartford Employees Union

**FERRARA FIORENZA P.C.**              **MILES G. LAWLOR, ESQ.**
5010 Campuswood Drive                   **NICOLE M. MARLOW-JONES, ESQ.**
East Syracuse, New York 13057
Attorneys for Defendant New
Hartford Central School District

**SCULLIN, S.J.**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff brings her complaint pursuant to 42 U.S.C. § 1983 for declaratory, injunctive, and monetary relief to redress the deprivation of her rights, privileges and/or immunities under the First and Fourteenth Amendments to the United States Constitution. *See* Dkt. No. 1, Complaint, at ¶ 1. She alleges that "Defendants' contracts, policies, and practices, under color of state law, including the state's Public Employees' Fair Employment Act, N.Y. Civ. Serv. Law, Article 14 (the "Taylor Law), under which Defendants had union dues or fees seized from [her] wages although she [was] a nonmember public employee who object[ed] to financially supporting Defendant Unions," caused her injury. *See id.*

Plaintiff asserts that Defendant New Hartford Employees Union ("NHEU") and Defendant New Hartford School District ("Defendant District") "entered into [a collective bargaining agreement ("CBA")] that controls the terms and conditions of [her] employment." *See id.* at ¶ 15 & "Exhibit A" incorporated by reference. "Article I of the CBA provides that [Defendant] District recognizes [Defendant] NHEU '"as the exclusive negotiating representative with respect to the terms and conditions of employment . . . .'" *See id.* at ¶ 16. According to Plaintiff, "[t]his bargaining unit encompasses [her] School Related Personnel position with [Defendant] District." *See id.* (citing Ex. A, art. I, sec. A). "The CBA provides that [Defendant] NHEU and its affiliates are entitled to union dues deductions." *See id.* (citing Ex. A, art. III, sec. A). According to Plaintiff, New York law "requires Plaintiff's employer, [Defendant] District, to extend to Defendant Unions the right to dues deductions from the wages of its employees." *See id.* at ¶¶ 18-19 (quoting Taylor Law, N.Y. Civ. Serv. Law § 208.1).

"Plaintiff became a member of Defendant Unions after beginning her public employment for [Defendant] District [as a school bus driver] in or about 2005." *See id.* at ¶ 21.  "Plaintiff resigned her membership from Defendant Unions and sought to end union dues deductions by signed letter dated March 22, 2021, emailed to Defendant NHEU's President, Vincent Nesci, and copied to an employee of Defendant District's payroll office." *See id.* at ¶ 22.  "Plaintiff also sent copies of her resignation letter to [Mr.] Nesci and [Defendant] District's payroll office via interoffice mail." *See id.*

Plaintiff alleges that Mr. Nesci responded to her email on March 22, 2021, and informed her that "'dues will continue to be withhold until August 1, 2021.  You will have a window period to request dues to terminate.  That window period is from August 1, 2021 [through] August 31, 2021.  You will need to send a written notice of revocation via the U.S. mail to the Union, between the above stated dates.'" *See id.* at ¶ 23.

According to Plaintiff, on April 9, 2021, Mr. Nesci informed her "that she was no longer a member of [Defendant] NHEU but that she would still pay dues until she 'submit[s] a letter as stated' in his March 22, 2021 email to [her]." *See id.* at ¶ 24.  Plaintiff contends that "[d]ues deductions continued from [her] wages through at least May 28, 2021." *See id.* at ¶ 25.  Furthermore, Plaintiff contends that, "[a]s a non-member of Defendant Unions, [she] did not receive union member benefits while her deductions were ongoing from the date of her resignation until the day they ceased." *See id.* at ¶ 26.  Moreover, she asserts that "Defendants continued to deduct, process, accept, and/or retain union dues and/or agency fees from [her] wages even after recognizing her resignation from Defendant Unions." *See id.* at ¶ 27.

Plaintiff claims that, despite her "acknowledged resignation from union membership and nonmember status, Defendants continued to seize and to accept union dues or fees from [her]

wages as a condition of employment after [she] resigned from the unions. *See id.* at ¶ 3. According to Plaintiff, this "concerted conduct violate[d] [her] First and Fourteenth Amendment rights to free association, self-organization, assembly, petition, and freedoms of speech, thought, and conscience." *See id.* at ¶ 4. Furthermore, she alleges that "Defendants acted in concert, by and through their agents and officials, to deduct and to accept union dues or fees from [her] wages without providing her any meaningful notice or opportunity to object to the ongoing deductions, the process by which the money was deducted, or the ways in which her money [was] used." *See id.* at ¶ 5. She asserts that "[t]hese omissions violate[d] [her] Fourteenth Amendment right to due process." *See id.*

Based on these allegations, Plaintiff asserts two causes of action, both under 42 U.S.C. § 1983. In her first cause of action, she alleges that "Section 208 of the Taylor Law and the CBA, on their face and/or as applied by Defendants, authorize and/or require Defendant District, by and through its agents, and Defendant Unions to force public employees to remain full dues payers despite their nonmember status and expressed intention to end financial support of a union, in violation of [their] rights under the First Amendment." *See id.* at ¶ 45. Furthermore, she asserts that "Sections 201 and 208 of the Taylor Law, facially and/or as applied by Defendants, permit Defendants to require public employees to maintain unwilling allegiance to and financial support of an employee organization, such as Defendant Unions, and is, therefore, unconstitutional." *See id.* at ¶ 46. Plaintiff contends that "Defendants' actions, taken pursuant to the Taylor Law, the CBA, and their joint policies and practices, under color of state law, impinge on [her] exercise of her rights to free association, self-organization, assembly, petition, and freedoms of speech, thought, and conscience as guaranteed by the First and Fourteenth Amendments to the United States Constitution." *See id.* at ¶ 47. Furthermore, she alleges that

"[t]he Taylor Law, on its face and/or as applied by Defendants, authorizes [them] to violate [her] constitutional rights by deducting union dues or fees from her wages without her consent, in violation of the United States Constitution" as the Supreme Court explained in *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448 (2018).  *See id.* at ¶ 48.

Finally, Plaintiff asserts that, "[a]s a direct result of Defendants' concerted actions, taken pursuant to state law, the CBA and their joint policies and practices," she was (1) "prevented from exercising her rights and privileges not to fund and support the agenda, activities, expenses, and speech of a private organization," (2) "was deprived of her civil rights guaranteed under the Constitution and statutes of the United States," and (3) "has suffered monetary damages and other harm."  *See id.* at ¶ 57.

As to her second cause of action, Plaintiff asserts that "[t]he Fourteenth Amendment to the United States Constitution guarantees due process to persons facing deprivation of liberty or property by state actors."  *See id.* at ¶ 59 (citing *Mathews v. Eldridge*, 424 U.S. 319, 348-49 (1976)).  Furthermore, she asserts that "public-sector unions and public employers have a responsibility to provide procedures that minimize constitutional impingement inherent in compelled association and speech and that facilitate the protection of public employees' rights."  *See id.* at ¶ 60 (citing *Chi. Tchrs. Union, Loc. No. 1 v. Hudson*, 475 U.S. 292, 307 & n.20 (1986)).  Plaintiff asserts that "Defendants have not implemented policies and procedures that are narrowly tailored to reduce the impingement on [her] constitutional rights, including the constitutionally required procedures and disclosures regarding the use of union dues or fees taken from her" as the Supreme Court recognized in *Hudson*.  *See id.* at ¶ 61.  Furthermore, Plaintiff alleges that "Defendants have not provided [her] with notice of or a meaningful

opportunity to object to the seizure of a portion of her wages via payroll deductions by [Defendant] District or the use of her monies by Defendant Unions." *See id.* at ¶ 62.

Furthermore, Plaintiff contends that she "has never waived her due process rights, including her right not to subsidize the speech and activities of Defendant Unions." *See id.* at ¶ 63. "As a result of Defendants' failure to provide procedural safeguards to protect [her] due process rights, [Plaintiff argues that] she was forced to pay fees," even after she was no longer a member of Defendant Unions. *See id.* at ¶ 64. Plaintiff argues that, "[a]s a direct result of Defendants' concerted actions, taken pursuant to state law, their CBA, and their joint policies and procedures," she (1) "is being prevented from exercising her rights and privileges to disassociate from and no longer support the agenda, speech and expenses of a private organization that she objects to supporting"; (2) "is being deprived of her civil rights guaranteed under the Constitution and laws of the United States"; and (3) "is in imminent danger of suffering irreparable harm, damage, and injury inherent in the violation of First and Fourteenth Amendment rights for which there is no adequate remedy at law." *See id.* at ¶ 65. Finally, she asserts that, if the Court does not enjoin "Defendants and/or their agents, [they] will continue to effect [these] deprivations and abridgments of [her] constitutional rights, thereby causing her irreparable harm." *See id.* at ¶ 66.

In response to the allegations in Plaintiff's complaint, Defendants New York State United Teachers and New Hartford Employees Union (collectively "Defendant Unions") filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim, *see* Dkt. No. 17; and Defendant New Hartford Central School District ("Defendant District") filed a motion seeking the same relief, *see* Dkt. No. 19. These motions are pending before the Court.

## II. DISCUSSION

**A.      Subject matter jurisdiction related to Plaintiff's claims for prospective injunctive and declaratory relief**

"'To establish Article III standing, a plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury "will be redressed by a favorable decision."'" *Fischer v. Governor of New Jersey*, 842 F. App'x 741, 747 (3d Cir. 2021) (quoting [*Susan B. Anthony List v. Driehaus*, 573 U.S.] at 157-58, 134 S. Ct. 2334 (quoting *Lujan v. Dfs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992))).   Moreover, the "[p]laintiff bear[s] the burden to prove each element of Article III standing." *Id.*  (citing *Driehaus*, 573 U.S. at 158, 134 S. Ct. 2334).  Furthermore, the plaintiff has the burden to ""demonstrate standing for each claim [she] seek[s] to press" and "for each form of relief" that is sought.'" *Id.* at 748 (quoting *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734, 128 S. Ct. 2759, 171 L. Ed. 2d 737 (2008) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352, 126 S. Ct. 1854, 164 L. Ed. 2d 589 (2006))).

In *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021), the Supreme Court addressed the differences between standing and mootness as follows: *i.e.*, "[t]he doctrine of standing generally assesses whether [the plaintiff's personal] interest [in the dispute] exists at the outset, while the doctrine of mootness considers whether it exists throughout the proceedings." *Id.* at 796.  The Court further explained that, "[t]o demonstrate standing, the plaintiff must not only establish an injury that is fairly traceable to the challenged conduct but must also seek a remedy that redresses that injury.  And if in the course of litigation a court finds that it can no longer provide a plaintiff with any effectual relief, the case is generally moot." *Id.*

Plaintiff concedes that Defendants' conduct since she filed her complaint in September 2021, has effectively mooted two of her claims for injunctive relief, *i.e.*, her claims for

> [a] permanent injunction requiring Defendants, their officers, employees, agents, attorneys, all other acting in concert with them: (i) not to enforce against Plaintiff any provisions in the Taylor Law, the CBA, or any other purported authorizations for deducting dues or fees that required her to provide financial support of Defendants Unions and/or their affiliates after resignation of her union membership without proper constitutional notice and waiver, or to otherwise engage in conduct or enforce any provisions of the Taylor Law or the CBA declared unconstitutional under Part A; and (ii) not to retain any money from Plaintiff in the form of union dues or fees deducted from her wages, or otherwise to seek to enforce the terms of any purported authorization for deducting dues[.]

*See* Dkt. No. 1, Complaint, at Prayer for Relief ¶¶ B.i-ii.

In addition to these two claims for injunctive relief, Plaintiff also seeks the following prospective relief:

> A.      Declaratory: A judgment based upon the actual, current, and *bona fide* controversy between the parties as to the legal relations among them, pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, declaring:
>
> i. that Defendants' actions in forcing Plaintiff, as a nonmember, to provide financial support to Defendant Unions, and Sections 201 and 208 of the Taylor Law, to the extent they relate to, authorize, and/or require Defendants to do so, on their face and/or as applied, violate the First and Fourteenth Amendments of the United States Constitution;
>
> ii. that any taking and/or retention of union dues or fees from Plaintiff after her resignation of membership in Defendant Unions and without proper constitutional notice and waiver violates her rights under the First and Fourteenth Amendments of the United States Constitution, and that any provisions in the Taylor Law, the CBA, or any other purported authorizations that allow or require such deductions of union dues or fees are unconstitutional;

- 8 -

      iii. or, alternatively, that the First and Fourteenth Amendments require Defendant Unions to provide Plaintiff with constitutionally adequate notice and a meaningful opportunity to object to the nonconsensual monies being seized from her wages and the purposes for which the monies are used, including the notice and procedures required by *Hudson*.

    B.    **Injunctive:**

      iii. or, alternatively, to provide constitutionally adequate notice and procedures regarding the District's payroll deductions of forced financial support for Defendant Union from Plaintiff's wages.

*See* Dkt. No. 1, Complaint, at Prayer for Relief.

Despite Plaintiff's arguments to the contrary, even if she ultimately prevailed on her constitutional claims against Defendants, none of the prospective declaratory and injunctive relief that she seeks would provide her with meaningful relief in light of the fact that she concedes that, once she sent the required notice to Defendant Unions that she was revoking her authorization for Defendant District to deduct union dues from her wages and remit those dues to Defendant Unions during the August 1-31 window period, Defendant District stopped deducting those dues from her wages. Therefore, the Court grants Defendants' motion to dismiss Plaintiff's claims for prospective injunctive and declaratory relief set forth in paragraphs A and B of the Prayer for Relief section of her complaint for lack of subject matter jurisdiction. *See* Dkt. No. 1, Complaint, at Prayer for Relief. The Court notes, however, that Plaintiff does have standing to seek the relief set forth in paragraphs C and D of the Prayer for Relief section of her complaint. *See id.*

**B.      Motions to dismiss**

*1. Standard of review*

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept the material facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *LMC Indus. Contractors, Inc. v. Dominion Energy Transmission, Inc.*, No. 5:20-CV-677 (FJS/ATB), 2021 WL 3737727, *2 (N.D.N.Y. Aug. 24, 2021) (Scullin, S.J.) (citing *Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (citation omitted)).  Moreover, although generally the court must limit its analysis to the four corners of the complaint when deciding a motion to dismiss, the court may consider documents attached to the complaint as exhibits or any documents incorporated by reference or integral to the complaint.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (quotation and other citation omitted).  A document is integral to the complaint "where the complaint 'relies heavily upon its terms and effect[.]'" *Id.* (quoting *Int'l Audiotext*, 62 F.3d at 72).  However, the court is not required to credit legal conclusions, bare assertions, or conclusory allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-81, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citations omitted).

Therefore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678, 129 S. Ct. 1937 (quoting [*Bell Atl. Corp. v. Twombly*, 550 U.S.] at 570, 127 S. Ct. 1955 [(2007)]).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing [*Twombly*, 550 U.S.] at 556, 127 S. Ct. 1955).  Therefore, under this standard, a plaintiff must

support her claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).  Thus, if the plaintiff has not "'nudged [her] claims' . . . 'across the line from conceivable to plausible,'" the court must dismiss the complaint.  *Id.* at 680, 129 S. Ct. 1937 (quoting [*Twombly*, 550 U.S. at 570, 127 S. Ct. 1955]).


### 2. Defendant Unions' motion to dismiss for failure to state a claim

To support her claims that Defendants violated her constitutional rights, Plaintiff relies heavily on the Supreme Court's decision in *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448 (2018).  Plaintiff is not the first individual to raise the same or very similar arguments since the Supreme Court decided *Janus* in 2018.  Although the Second Circuit has not yet weighed in on the precise issues that Plaintiff raises, other Circuit Courts, as well as some District Courts in those circuits, have and those courts have rejected these arguments on various grounds.

Despite Plaintiff's argument to the contrary, a review of the Supreme Court's decision in *Janus* demonstrates that her situation is very different from that of the plaintiff in *Janus*; and, as a result, the issues that the Supreme Court addressed in *Janus* are different than the issues that the Court needs to resolve in his case.  In *Janus*, the plaintiff was not a union member either before or after *Janus* was decided.  Prior to *Janus*, he had been subject to "fair share" deductions, which the Supreme Court found unconstitutional in *Janus*.  Plaintiff, on the other hand, was a union member both before and after *Janus* was decided, *i.e.*, from 2005 until she resigned from Defendant Unions in March 2021.  As the Ninth Circuit noted in *Belgau v. Inslee*, 975 F.3d 940 (9th Cir. 2020), "[t]he Supreme Court's decision in *Janus* . . . was a gamechanger in the world of unions and public employment" . . . "[b]ut the world did not change for [plaintiffs] and others who affirmatively signed up to be union members." *Id.* at 944.

Plaintiff does not dispute that she voluntarily joined Defendant Unions when she began her employment with Defendant District in 2005 and remained a member of said unions until she resigned her membership in March 2021.  Rather, she contends that Defendants violated her constitutional rights when, acting in concert with each other, Defendant District continued to deduct union dues from her wages and remit those dues to Defendant Unions even after she resigned from Defendant Unions in March 2021 until August 2021.  However, even a cursory reading of her Membership Agreement, makes clear that she authorized those deductions:

> I understand that this authorization [for Defendant District to deduct membership dues from my wages and remit] that amount to the local [Defendant NHEU]" and that "I understand that this authorization . . . is not a condition of my employment and shall remain in effect, regardless of whether I am or remain a member of the union, for a period of one year from the date of this authorization and shall automatically renew from year to year **unless I revoke this authorization by sending a written, signed notice of revocation via U.S. mail to the union between the window period of Aug. 1-31 or another window period specified in a collective bargaining agreement.**

*See* Dkt. No. 1-2, Exhibit "B," Plaintiff's Union Membership Agreement.

Plaintiff does not dispute that, when she sent the required letter to Defendant Unions during the August window period, Defendant District stopped deducting membership dues from her wages.  Thus, the Court concludes that Plaintiff has not plausibly alleged that Defendants violated her constitutional rights by abiding by the authorization that she voluntarily provided to them in her Membership Agreement.

Alternatively, even assuming for sake of argument that Plaintiff were able to show that she did not voluntarily sign the Membership Agreement or that there was an ambiguity in the Membership Agreement or that Defendant Unions breached the Membership Agreement -- all of which might be appropriate arguments for a breach-of-contract claim against Defendant Unions -

- such allegations do not suffice to state a claim for relief against Defendant Unions pursuant to 42 U.S.C. § 1983 because Plaintiff has failed to allege facts to support a claim that Defendant Unions were acting under "color of state law," which is a necessary element of a § 1983 claim.

In deciding "whether the conduct at issue was taken under color of state law, courts determine whether the action may 'fairly be attributable to the State.'"  *Oliver v. Serv. Employees Int'l Union Local 668*, 415 F. Supp. 3d 602, 608 (E.D. Pa. (2019)).

> There are two pongs to the "fair attribution" test: first, the conduct responsible for the alleged deprivation must have been "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible"; and second, "the party charged with the deprivation must be a person who may fairly be said to be a state actor."

*Id.* at 608-09 (quoting [*Lugar*, 457 U.S. at 937]) (citing *American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40, 50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999) (quoting both prongs of *Lugar* test)).

Plaintiff argues that Defendant Unions acted in concert with Defendant District by continuing to deduct union dues from her wages and remitting those dues to Defendant Unions after she had resigned from Defendant Unions in March 2021 until she sent the required letter to Defendant Unions revoking her authorization for those dues deductions during the August 1-31 window period without proper consent in violation of the First Amendment.  Rejecting a similar argument, the Ninth Circuit noted that "[t]he fallacy of this approach is that it assumes state action sufficient to invoke a constitutional analysis." *Belgau*, 975 F.3d at 946.  The Court explained that, "[t]o establish a claim under 42 U.S.C. § 1983, [the plaintiffs] must show that [the union] deprived them of a right secured by the Constitution and acted "under color of state law.'" *Id.* (quoting *Collins v. Womancare*, 878 F.2d 1145, 1147 (9th Cir. 1989)).  However, the Court noted that "[t]he Supreme Court has long held that 'merely private conduct, however,

discriminatory or wrongful,' falls outside the purview of the Fourteenth Amendment." *Id.* (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982) (citation omitted)).

Although the Ninth Circuit's decision in *Belgau* is not binding on this Court, the Court finds the *Belgau* court's reasoning persuasive and, for the reasons stated below, concludes that Defendant Unions are not state actors within the meaning of § 1983.

First, Plaintiff does not allege that she was coerced to join Defendant Unions in 2005, nor does she allege that she was forced to sign the Membership Agreement.  On April 12, 2018, Plaintiff signed the relevant Membership Agreement, which is on NYSUT letterhead and provides, in pertinent part, as follows:

> Yes!  I request and accept membership in the local organization named above [NHEU], the New York State United Teachers (NYSUT) and its national affiliates, American Federation of Teachers (AFT), the National Education Association (NEA), and the American Federation of Labor-Congress of Industrial Organizations (AFL-CIO), where applicable.
> I recognize the need for a strong union and believe everyone represented by a union should pay their fair share to support the union's activities.  **I hereby request and voluntarily authorize my employer to deduct an amount equal to the regular monthly dues uniformly applicable to members of the local organization named above [NHEU] and remit that amount to the local.  I understand that this authorization and assignment is not a condition of my employment and shall remain in effect,** *regardless of whether I am or remain a member of the union, for a period of one year from the date of this authorization and shall automatically renew from year to year* **unless I revoke this authorization by sending a written, signed notice of revocation via U.S. mail to the union between** *the window period of Aug. 1-31 or another window period specified in a collective bargaining agreement.*

*See* Dkt. No. 1-2, Exhibit "B," Plaintiff's Union Membership Agreement (emphasis added).

Moreover, despite Plaintiff's argument to the contrary, the Membership Agreement is clearly an agreement between Plaintiff and Defendant Unions.  *See Oliver*, 415 F. Supp. 3d at 611 (rejecting the plaintiff's argument that dues authorization constituted a contract between the employee and the employer, not the union and finding "this view of dues-deduction provisions unrealistic and artificial, because once the [employer] has issued a wage payment under the [collective bargaining agreement] to the employee it has no beneficial interest in any portion of the wages.  In deducting dues from the employee's wages it is simply acting as a transfer agent carrying out the separate agreement between the union and its member."); *see also IBEW Local No. 2088 (Lockheed Space Operations)*, 302 N.L.R.B. 322, 327 (1991).  Furthermore, Plaintiff dos not allege that Defendant District received any benefit from performing its ministerial task of collecting and forwarding, with Plaintiff's authorization, union dues to Defendant Unions.

The crux of Plaintiff's claim is that, after she resigned from Defendant Unions in March 2021, Defendants acting in concert violated her constitutional rights by having Defendant District continue to deduct union dues from her wages and transmit those dues to Defendant Unions until at least the end of May 2021.  However, even a cursory review of the Membership Agreement, which Plaintiff attached to her complaint, demonstrates that Defendant District did no more than honor Plaintiff's authorization according to the terms of the Membership Agreement.  Specifically, Plaintiff voluntarily authorized Defendant District to deduct an amount equal to the regular monthly dues uniformly applicable to members of NHEU and remit that amount to NHEU.  She also agreed that she understood that this authorization was not a condition of her employment and would remain in effect unless she revoked the authorization by sending a written, signed notice of revocation via U.S. Mail to the union between the window period of August 1-31 or another window period specified in a CBA.  Finally, Plaintiff does not

dispute that, once she sent her notice of revocation of the authorization for Defendant District to deduct union dues from wages and remit those dues to NHEU during the window period of August 1-31, 2021, Defendant District stopped deducting union dues from her wages.

Thus, as in *Belgau*, the source of the alleged constitutional harm, *i.e.,* the violation of her First Amendment rights, was **not** a policy of Defendant District but, rather, her authorization for those dues deductions in her Membership Agreement, which was a private agreement between Plaintiff and Defendant Unions. There was, therefore, no joint action between Defendant Unions and Defendant District. Defendant District did not affirm, authorize, encourage or facilitate any unconstitutional conduct through its involvement with Defendant Unions; it merely acted as a passthrough for dues deductions which it remitted to Defendant NHEU per Plaintiff's authorization. Nor did Defendant District insinuate itself into the position of interdependence with Defendant Unions so that it could be recognized as a joint participant in the challenged activity.[1]

In fact, Defendant District's only role was to permit the private choice of Plaintiff to join Defendant Unions, agree to pay monthly dues, and authorize Defendant District to deduct those monthly dues from her wages and remit them to Defendant Unions. Thus, the role of Defendant

---

[1] If, as Plaintiff seems to argue, Defendant Unions breached the Membership Agreement by continuing to collect membership dues from March 2021, when she resigned from Defendant Unions, until August 2021, when she revoked her authorization to have Defendant District deduct those dues from her wages, such allegations, if true, might be the basis for a breach-of-contract claim against Defendant Unions, but, as private entities, the First Amendment does not bind them because they are not state actors. *See Fischer*, 842 F. App'x at 753 (stating that "*Janus* does not give Plaintiffs the right to terminate their commitments to pay union dues unless and until those commitments expire under the plain terms of their membership agreements"); *see id.* at 753 n.18 (stating that, "[b]ecause enforcement of Plaintiffs' membership agreements does not violate the First Amendment given that those agreements are enforceable under laws of general applicability, *see Cohen*, 501 U.S. at 670, 111 S. Ct. 2513; *Belgau*, 975 F.3d at 944-45, [the court] rejects Plaintiff's argument that Defendants were required to obtain an affirmative First Amendment waiver from Plaintiffs before deducting union dues from their paychecks").

District was neither significant nor coercive.  Therefore, the Court concludes that, when Plaintiff signed her Membership Agreement in which she authorized dues deductions, she did not do so as the result of any action on the part of Defendant District.  Although Defendant District was required to enforce the Membership Agreement under the Taylor Law, it had no say in shaping the terms of that Agreement.  Thus, Defendant District did not provide significant assistance to the underlying acts that Plaintiff contends constituted the core violation of her First Amendment rights because the law requires Defendant District to enforce the decisions of Plaintiff and Defendant Unions without inquiry into the merits of the Membership Agreement.

In addition, Defendant District's role was at  most a ministerial processing of payroll deductions pursuant to Plaintiff's authorization.  Providing the means for implementing the private agreement between Plaintiff and Defendant Unions by performing an administrative task does not render Defendant District and Defendant Unions joint actors.  *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 54 (1999).  As the Supreme Court held in *Sullivan* much more is required -- Defendant District must have "so significantly encourage[d] the private activity as to make [Defendant District] responsible for" the allegedly unconstitutional conduct.  *Id.* at 53 (stating that the Supreme Court "ha[d] never held that the mere availability of a remedy for wrongful conduct, even when the private use of that remedy serves important public interests, so significantly encourages the private activity as to make the State responsible for it" (citations omitted)).

Nor did Defendant District "insinuate[] itself into a position of interdependence" with Defendant Unions.  *Ohon v. Yasuma*, 723 F.3d 984, 996 (9th Cir. 2013) (citation omitted).  The fact that Defendant District and Defendant NHEU were parties to a CBA does not support a finding of joint action.  *See Belgau* 975 F.3d at 948 (stating that "[a] merely contractual

relationship between the government and the non-governmental party does not support joint action; there must be a 'symbiotic relationship' of mutual benefit and 'substantial degree of cooperative action'" (quoting *Sawyer v. Johansen*, 103 F.3d 140, 140 (9th Cir. 1996) (other citation omitted)).

Furthermore, "no significant interdependence exists unless the 'government in any meaningful way accepts benefits derived from the allegedly unconstitutional actions.'" *Belgau*, 975 F.3d at 948 (quoting *Ohno*, 723 F.3d at 997).  Plaintiff does not allege that Defendant District received any benefits for acting as a passthrough for the dues collection.  In fact, Defendant District merely remitted the total amount of dues it deducted from Plaintiff's wages to Defendant Unions and kept nothing for itself.

Therefore, since neither Defendant District's role in the alleged unconstitutional conduct or its relationship with Defendant Unions justifies characterizing Defendant Unions as state actors, Plaintiff has not alleged sufficient facts, even if accepted as true, to establish the threshold state-action requirement needed to state a plausible claim under § 1983.  Accordingly, for all of the above-stated reasons, the Court grants Defendant Unions' motion to dismiss Plaintiff's complaint for failure to state a claim against them.

### 3. Defendant District's motion to dismiss for failure to state a claim

"To set forth a viable claim against a municipality pursuant to *Monell*, a plaintiff 'cannot merely allege the existence of a municipal policy or custom, but "must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists."'" *Ejimadu v. City of Rochester*, No. 6:21-CV-6544, 2022 WL 4095838, *3 (W.D.N.Y. Sept. 7,

2022) (quoting *Kucharczyk v. Westchester Cnty.*, 95 F. Supp. 3d 529, 540 (S.D.N.Y. 2015)

(quoting *Santos v. N.Y.C.,* 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012))) (other citation omitted).

"'[T]he word "policy" generally implies a course of action consciously chosen from

among various alternatives.'"  *Vives v. City of New York*, 524 F.3d 346, 350 (2d Cir. 2008)

(quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S. Ct. 2427, 85 L. Ed.2d 791 (1985)).

"Policy, in the *Monell* sense, may of course be made by the municipality's legislative body, *see*

*Owen*, 445 U.S. at 628-29, 100 S. Ct. 1398, but it also may be made by a municipal official

'possess[ing] final authority to establish municipal policy with respect to the action ordered.'"  *Id.*

(quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S. Ct. 1292, 80 L. Ed. 2d 452

(1986)).

In *Vives*, the Second Circuit, as a matter of first impression, addressed "[t]he issue of

whether -- and under what circumstances -- a municipality can be liable for enforcing a state

law[.]"  *Vives*, 524 at 351.  As the *Vives* court noted, "a policy will ordinarily be the result of a

conscious choice and . . . the policy must actually cause the constitutional violation."  *Id.* at 352

(citing *Tuttle*, 471 U.S. at 823, 105 S. Ct. 2427).  In addressing the conscious-choice

requirement, the Second Circuit held that "a municipality's 'decision' to fulfill a mandatory

obligation does not constitute a 'choice[.]'"  *Id.* at 353 n.4.  "On the other hand, if a municipality

decides to enforce a statute that it is authorized, but not required, to enforce, it may have created

a municipal policy."  *Id.* at 353.

With regard to Defendant District's motion to dismiss, the first issue is whether

§ 208(1)(b) of New York Civil Service Law requires or merely authorizes Defendant District to

extend to employee organizations, such as Defendant Unions, the right "to membership dues

deduction upon presentation of dues deduction authorizations cards signed by individual

employees." N.Y. Civ. Serv. Law § 208(b)(1).  If the answer to that question is that § 208(b)

merely authorizes Defendant District to extend such rights to organizations such as Defendant

Unions, the second issue is whether the Defendant District's decision to provide Defendant

Unions with that right created a municipal policy.

New York Civil Service Law § 208(1)(b) provides, in pertinent part, that

> [a] public employer shall extend to an employee organization
> certified or recognized pursuant to this article the following rights:
> . . . (b) to membership dues deduction, upon presentation of dues
> deduction authorization cards signed by individual employees.  A
> public employer shall commence making such deductions as soon
> as practicable, but in no case later than thirty days after receiving
> proof of a signed dues deduction authorization card; and such dues
> shall be transmitted to the certified or recognized employee
> organization within thirty days of the deduction.  A public
> employer shall accept a signed authorization to deduct from the
> salary of a public employee an amount for the payment of his or
> her dues in any format permitted by article three of the state
> technology law.  The right to such membership dues deduction
> shall remain in full force and effect until: (i) an individual
> employee revokes membership in the employee organization in
> writing in accordance with the terms of the signed authorization; . .
> .

N.Y. Civ. Serv. Law § 208(1)(b).

Plaintiff asserts in her complaint that "Section 208 of the Taylor Law and the CBA, on

their face and/or as applied by Defendants, authorize and/or require the District, by and through

its agents, and Defendant Unions to force public employees to remain full dues payers despite

their nonmember status and expressed intention to end financial support of a union, in violation

of employees' rights under the First Amendment."  *See* Dkt. No. 1, Complaint, at ¶ 45.

Furthermore, Plaintiff alleges that "Sections 201 and 208 of the Taylor Law, facially and/or as

applied by Defendants, permit Defendants to require public employees to maintain unwilling

allegiance to and financial support of an employee organization, such as Defendant Unions, and

is, therefore, unconstitutional."  *See id.* at ¶ 46.  In addition, according to Plaintiff, "Defendants'

actions, taken pursuant to the Taylor Law, the CBA, and their joint policies and practices, under color of state law, impinge on Plaintiff's exercise of her rights to free association, self-organization, assembly, petition, and freedom of speech, thought, and conscience as guaranteed by the First and Fourteenth Amendments of the United States Constitution." *See id.* at ¶ 47. Finally, Plaintiff alleges that "[t]he Taylor Law, on its face and/or as applied by Defendants, authorizes Defendant to violate Plaintiff's constitutional rights by deducting union dues or fees from her wages without her consent, in violation of the United States Constitution as explained in *Janus*." *See id.* at ¶ 48.

Although when considering a motion to dismiss the court must accept the allegations in a plaintiff's complaint as true and limit its review to the four-corners of the complaint, in this case, the Court can also consider the Membership Agreement and the CBA, both of which are attached to Plaintiff's complaint. *See Chambers*, 282 F.3d at 153. However, the Court need not "credit legal conclusions, bare assertions, or conclusory allegations." *See Iqbal,* 556 U.S. at 678-81 (citations omitted). Plaintiff argues that Defendant District had a policy of deducting union dues from its employees' wages after those employees resigned from Defendant Unions, at which point they became non-members and, thus, Defendant District was violating those employees' First Amendment rights by deducting union dues from non-members. However, the documents attached to Plaintiff's complaint belie these claims. As noted, Plaintiff voluntarily signed a Membership Agreement that, among other things, authorized Defendant District to deduct union dues from her wages until she rescinded that authorization during the window period of August 1-31 each year. Moreover, to the extent that Plaintiff is alleging that New York Taylor Law allows employers to deduct union dues from their employees even after they resign from the union, the plain language of § 208(1)(b) negates that argument because it clearly provides that

"[t]he right to such membership dues deduction shall remain in full force and effect until: (i) an individual employee revokes membership in the employee organization in writing **in accordance with the terms of the signed authorization** . . . ."  N.Y. Civ. Serv. Law § 208(1)(b).

It is clear from the use of the word "shall" in § 208(1)(b) that § 208 requires a public employer, such as Defendant District to extend the right of membership dues deductions to labor organizations, such as Defendant Unions, upon the presentation of dues deductions authorizations cards signed by individual employees, such as Plaintiff.  Defendant District could not have, without violating state law, denied Defendant Unions the right of membership dues deductions once Plaintiff had signed her Membership Agreement, which authorized Defendant District to deduct her union membership dues from her wages.  Thus, it was not a policy of Defendant District, but rather state law, that required Defendant District to deduct union membership dues from Plaintiff's wages until Plaintiff revoked that authorization "in accordance with the terms of the signed authorization."  N.Y. Civ. Serv. Law § 208(1)(b).

In this case, Plaintiff's Membership Agreement provided that she could resign from the union at any time but that dues would continue to be deducted from her wages until she revoked her authorization for Defendant District to deduct dues from her wages by sending a written, signed notice of revocation via U.S. mail to the union between the window period of August 1 through 31.  *See* Dkt. No. 1-2, Exhibit "B," Plaintiff's Union Membership Agreement.  There is no evidence, nor does Plaintiff allege, that, once she sent the required letter to Defendant Unions rescinding her authorization for Defendant District to deduct union dues from her wages in August 2021, Defendant District continued to deduct those dues.  In fact, the last time that Defendant District deducted union dues from Plaintiff's wages was in June 2021, at the end of the school year.  Thus, Plaintiff has failed to allege sufficient facts to state a plausible claim that

Defendant District's policy of adhering to the terms of Plaintiff's Membership Agreement violated her constitutional rights.

As noted above, Plaintiff does not deny that she signed her Membership Agreement voluntarily or that the Membership Agreement provided that her authorization would automatically renew from year to year until she revoked her authorization for her employer to deduct union dues and remit those dues to Defendant Unions within the stated window period. *See* Dkt. No. 1-2, Exhibit "B," Plaintiff's Union Membership Agreement.

Also, to be clear, Plaintiff does not take issue with Defendant District's deducting union dues from her wages prior to her resignation from Defendant Unions in March 2021. Her claims are limited to Defendant District's deduction of union dues from her wages between March 2021 and August 2021, after she had resigned from Defendant Unions **but** before she revoked her authorization for Defendant District to deduct union dues in a letter that she sent to Defendants Unions in August 2021, pursuant to the terms of the Membership Agreement.[2]

---

[2] Plaintiff appears to equate the dues that were deducted from her wages from March 2021 to August 2021 to the fair-share deductions that the Supreme Court found unconstitutional in *Janus*. However, the two are very different. The plaintiff in *Janus* was never a member of a union. Rather, he was subjected to fair share payments as a non-member of the union that represented workers at his place of employment. Plaintiff, on the other hand, was a member of Defendant Unions, who voluntarily signed a Membership Agreement with Defendant Unions that authorized Defendant District to deduct union dues from her wages and remit those dues to Defendant Unions until she revoked that authorization according to the terms of the Membership Agreement, *i.e.*, until she sent a letter revoking that authorization to Defendant Unions within the annual window period of August 1-31. Although the *Janus* Court concluded that requiring non-union members to make a fair share payment to a union, to which they did not belong, was unconstitutional, it made no such finding regarding the legality of union members entering into membership agreements with their unions, which provided for members to authorize their employers to deduct union dues and remit those dues to their unions and also provided a method by which those same employees could revoke that authorization.

Both the CBA and Plaintiff's Membership Agreement negate her argument.  Article III of the relevant CBA provides, in pertinent part, that "[t]he New Hartford Employees' Union [NHEU] and its affiliates shall be entitled to the following deductions: . . . Union Dues."  *See* Dkt. No. 1-1, Exhibit "A," Article III, Payroll Deductions, Section A.  In addition, as noted above, Plaintiff's Membership Agreement clearly provides that she requested and voluntarily authorized Defendant District to deduct union dues from her wages and remit them to Defendant NHEU and that this authorization would remain in effect until she revoked that authorization by sending a written, signed notice of her revocation by United States mail to the union between the window period of August 1-31.[3]  Thus, by continuing to deduct union dues from Plaintiff's wages from March 2021 through August 2021, Defendant District was merely honoring Plaintiff's self-imposed, voluntary authorization that Defendant District deduct union dues from her wages unless she revoked said authorization during the annual window period.  Moreover, although Plaintiff was free to resign from the union at any time during the year, this did not negate her financial obligation to pay union dues until she revoked her authorization for dues deductions according to the terms of the Membership Agreement.  *See Comm'ns Workers of Am., CIO v. NLRB*, 215 F.2d 835, 838 (2d Cir. 1954) (stating that, "'[u]nder the doctrine [on withdrawal from voluntary associations] a member of a voluntary association is free to resign at will, subject of course to any financial obligations due and owing to the association" (citations omitted)); *see also NLRB v. Granite State Joint Bd., Textile Workers Union of Am., Local 1029, AFL-CIO*, 409 U.S. 213, 216-217 (1972) (quoting *Comm'ns Workers of Am., CIO v. NLRB*, 215

---

[3] The Membership Agreement provided two window periods - August 1-31  or "another window period specified in a collective bargaining agreement."  There was no other window period specified in the CBA, and Plaintiff does not argue otherwise, so there was only one possible window period in which she could revoked her authorization.

F.2d 835, 838 (2d Cir. 1954). For all these reasons, the Court concludes that Plaintiff has failed to allege sufficient facts to state a plausible claim that any alleged constitutional claim that she might have suffered resulted from a policy of Defendant District. Therefore, the Court grants Defendant District's motion to dismiss Plaintiff's claims against it.

### III. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant Unions' motion to dismiss Plaintiff's claims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, *see* Dkt. No. 17, is **GRANTED**; and the Court further

**ORDERS** that Defendant District's motion to dismiss Plaintiff's claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, *see* Dkt. No. 19, is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case.

**IT IS SO ORDERED.**

Dated: September 19, 2022
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge

- 25 -